UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

  Plaintiff,

  v.                                                                                              Case No. 20-CR-100-PP-SCD

TRAYVON TAYLOR,

  Defendant.

---

### REPORT AND RECOMMENDATION
### ON DEFENDANT'S MOTION TO SUPPRESS

---

      In March 2020, Trayvon Taylor and Larnelle Tabor were arrested after they crashed a vehicle they had allegedly stolen at gunpoint a few days prior. Law enforcement obtained a warrant to search two cell phones that were found inside the stolen vehicle—one of which belonged to Taylor—but the affidavit submitted in support of that warrant was swapped with a different affidavit seeking to collect a DNA sample from Tabor. Taylor has moved to suppress the evidence acquitted from his phone, arguing that the warrant was not supported by probable cause. The government opposes the motion. Because it is clear that the search-warrant affidavits were mismatched as a result of a clerical error, suppression is not appropriate in this case. Accordingly, I will recommend that Taylor's suppression motion be denied.

### BACKGROUND

      At approximately 3:20 p.m. on March 4, 2020, REH was sitting in his vehicle in a Walgreens parking lot in Wauwatosa when an individual opened his door and pointed a handgun at him. *See* ECF No. 30-2 at 2–3. Another individual entered the passenger side of

REH's vehicle. *Id.* at 3. Both individuals told REH to leave his keys inside the vehicle, but REH refused. After the second individual unsuccessfully tried to grab the keys from REH's hands, the two individuals left the parking lot on foot. A few minutes later, in a bank parking lot located across the street from the Walgreens, SC was loading items into the trunk of her black 2006 Lincoln Zephyr when an someone pressed a small, black handgun to her stomach and said, "Give me the keys." *Id.* SC gave the individual her keys; he and two other males entered SC's vehicle and drove away.

On March 8, 2020, officers from the Milwaukee Police Department observed the stolen Lincoln Zephyr in the area of North 35th Street and West Keefe Avenue. *See* ECF No. 30-2 at 3. When officers attempted to stop the vehicle, the driver sped away, eventually reaching speeds in excess of eighty miles per hour. The 1.7-mile pursuit ended a short time later when the stolen vehicle ran a red light at North 35th Street and West North Avenue and crashed into several vehicles that were driving through the intersection. Both the driver, identified as Larnelle J. Tabor, and the passenger, Trayvon D. Taylor, were arrested. At the time of his arrest, Tabor was in possession of a loaded, black 9mm handgun and suspected marijuana and cocaine. Inside the stolen vehicle, officers located a loaded, black .22 caliber handgun. The following day, officers searched the vehicle and found a digital scale, methamphetamine pills, marijuana, a pink and white iPhone, and a silver iPhone.

On March 9, 2020, Martin Keck, a detective with the Wauwatosa Police Department, presented a Milwaukee County prosecutor with three search-warrant affidavits: (1) to collect a DNA sample from Taylor, *see* ECF No. 30-1; (2) to collect a DNA sample from Tabor, *see* ECF No. 30-2; and (3) to search the two iPhones recovered from the stolen vehicle, *see* ECF No. 30-3. Later that day, Detective Keck submitted the three warrant affidavits to Barry

Phillips, a judicial court commissioner with the Milwaukee County Circuit Court. Commissioner Phillips signed the phone warrant at 3:53 p.m., *see* ECF No. 30-3 at 1; the Tabor DNA warrant at 3:55 p.m., *see* ECF No. 30-2 at 1; and the Taylor DNA warrant at 3:57 p.m., *see* ECF No. 30-1 at 1. The DNA warrants were executed and returned the following day. *See* ECF No. 30-1 at 5; ECF No. 30-2 at 6. A forensic examination of the iPhones revealed text messages, photographs, and an associated phone number and email address that were of evidentiary value. *See* ECF No. 30 at 3. Using the phone number associated with the pink and white iPhone, officers later obtained a warrant for the phone's cell-site location information. *See id.* at 3–4.

On June 23, 2020, a grand jury sitting in the Eastern District of Wisconsin returned an indictment against Taylor and Tabor. *See* ECF No. 1. Taylor is charged in all seven counts: (1) attempted carjacking of REH; (2) using, carrying, or brandishing a firearm during the attempted carjacking of REH; (3) carjacking SC; (4) using, carrying, or brandishing a firearm during the carjacking of SC; (5) unlawfully transporting a stolen vehicle; (6) possessing with intent to distribute amphetamines; and (7) possessing a firearm in furtherance of a drug-trafficking crime. Taylor was arraigned on the charges and entered a plea of not guilty. *See* ECF No. 10. The matter is assigned to U.S. District Judge Pamela Pepper for trial and to me for resolving pretrial motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. The trial date has been adjourned. *See* ECF No. 27.

On September 8, 2020, Taylor filed a motion seeking to suppress all evidence and derivative evidence acquired from the search of his pink and white iPhone. *See* ECF No. 29. The government responded to the motion on September 18, 2020. *See* ECF No. 30. On September 24, 2020, Taylor submitted his reply. *See* ECF No. 33.

**DISCUSSION**

Taylor argues that all evidence acquired through the search of his phone must be suppressed because the affidavit submitted in support of the warrant to search the phone was not supported by probable cause. That affidavit discusses DNA evidence but says nothing about the phones recovered from the stolen vehicle or why evidence of a crime would be found on them. According to Taylor, this fatal deficiency undermines any assertion that the executing officers relied on the warrant in good faith. *See* ECF No. 29 at 2–4. The government argues that suppression is not appropriate in this case because it is clear from reviewing all materials submitted to the issuing judicial officer that the phone affidavit was inadvertently swapped with the affidavit concerning Tabor's DNA. *See* ECF No. 30 at 4. The government further argues that the executing officers relied on the warrant in good faith and that the evidence acquired from the phone would have inevitably been discovered. *See id.* at 5–7.

**I.   Applicable law**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)).

"A search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)). In deciding whether an affidavit

4

Case 2:20-cr-00100-PP    Filed 09/29/20    Page 4 of 11    Document 34

establishes probable cause, "courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)." *McNeese*, 901 F.2d at 592. Applying the totality-of-the-circumstances standard, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* at 232. Thus, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

The court's duty in reviewing a search warrant and its supporting materials is limited to ensuring "that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In other words,

> a magistrate's determination of probable cause is to be "given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated."

*United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). Even "doubtful cases should be resolved in favor of

5

upholding the warrant." *Rambis*, 686 F.2d at 622 (citations omitted).

While suppression ordinarily is the appropriate remedy for a Fourth Amendment violation involving illegally-obtained evidence, *see Mapp v. Ohio*, 367 U.S. 643 (1961), "the exclusionary rule does not apply to evidence 'obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause,'" *United State v. Patton*, 962 F.3d 972, 974 (7th Cir. 2020) (quoting *United States v. Leon*, 468 U.S. 897, 900 (1984)). An officer's "decision to obtain a search warrant is prima facie evidence of good faith." *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020) (citing *Leon*, 468 U.S. at 920 n.21). A defendant "may rebut this presumption by showing that the issuing judge 'wholly abandoned his judicial rule' or that the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Orr*, 969 F.3d at 738 (quoting *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005)).

**II.     Analysis**

It is undisputed that on March 9, 2020, Detective Keck submitted to Commissioner Phillips three search-warrant requests related to the attempted and completed carjackings allegedly committed by Taylor and Tabor on March 4, 2020. These requests sought: (1) Taylor's DNA, (2) Tabor's DNA, and (3) a search of two phones. *See* ECF Nos. 30-1, 30-2, 30-3. It is also undisputed that Commissioner Phillips reviewed all three search-warrant applications at the same time. One of the affidavits filed with the application sought permission to conduct a forensic examination of two iPhones that were recovered on March 9 from the stolen vehicle. *See* ECF No. 30-2 at 2–5. That affidavit described the facts of the attempted and completed carjackings, indicated that two iPhones were recovered from the

6

stolen vehicle a few days later, and explained the "nexus" between the two phones and the alleged crimes. *See id.* That affidavit clearly set forth sufficient facts from which a reasonable prudent person could believe that a search of the phones would uncover evidence of a crime. Taylor reasonably does not challenge those facts.

The twist here is that someone—it's impossible to know who—attached the affidavits to the wrong warrants. Specifically, although there is an affidavit demonstrating probable cause to search the cell phones, that affidavit is appended to the warrant to search Larnelle Tabor's DNA, *not* to the warrant to search the phones. ECF No. 30-2. Instead, the cell phone warrant is supported by an affidavit seeking a search of the defendants' DNA. ECF No. 30-3. The upshot of this is that the affidavit supporting the cell phone search does not contain any discussion of cell phones at all. As such, Taylor believes there was no probable cause to search the phones and argues that any evidence obtained from such a search must be suppressed.

It is clear from reviewing all materials submitted to Commissioner Phillips that someone mistakenly interchanged the phone affidavit with the affidavit for Tabor's DNA. *Compare* ECF No. 30-2 *with* ECF No. 30-3. It was a clerical error. But because courts "do not test the validity of search warrants and their supporting affidavits in a vacuum," it is reasonable to view the warrant in its broader context here and find that the clerical mistake of improperly matching the affidavits with the warrants does not undermine the validity of the phone warrant. *See United States v. Waker,* 534 F.3d 168, 171 (2d Cir. 2008). To ignore this context would elevate form over substance, and this is why courts commonly excuse clerical errors in warrants. *See United States v. Norris*, 640 F.3d 295, 302 (7th Cir. 2011). It might be different if the government were attempting to bolster a defective warrant with an affidavit

7

filed after the fact, or with other evidence extraneous to the warrant. Here, however, we have a set of three contemporaneous affidavits, all in front of the same judge at the same time, and the existence of probable cause to search the phones is not disputed. Under these unusual circumstances, it is appropriate to recognize the clerical error for what it is, rather than elevate the gaffe to a matter of grave constitutional significance.

Even if the warrant were invalid, I would not conclude that suppression is an appropriate remedy for a mistake made while assembling or filing a search-warrant package. Although we do not know whether Detective Keck made the error or whether it was made by the commissioner or another court employee, it does not matter. Assume it was Detective Keck. Because probable cause to search the phones existed, as demonstrated in the cell phone affidavit, Detective Keck did not need to resort to trick, ruse, or deception to obtain the warrant, and neither did he commit any other misconduct that would be deterred by suppression. From Keck's perspective, there would have been no point in *deliberately* switching the affidavits—it was an obvious blunder. The exclusionary rule was not designed to deter innocent mistakes. *See Herring v. United States*, 555 U.S. 135, 143 (2009) (noting that "the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional.") "[T]he purpose of suppression is to deter police misconduct, *see United States v. Leon*, 468 U.S. 897, 918-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and when law enforcement officers have obtained a search warrant in good faith and acted within its scope, there is 'nothing to deter.'" *United States v. Coombs*, 857 F.3d 439, 446 (1st Cir. 2017) (quoting *Leon,* 468 U.S. at 921). In short, there was no police "misconduct" here that could be deterred by suppression of the evidence. *See Leon,* 468 U.S. at 911 (citations omitted) (finding that "an assessment of the flagrancy of the police misconduct constitutes an

8

important step in the calculus" of applying the exclusionary rule.) Because the exclusion of relevant evidence is a blunt instrument, it should be applied only when it's clear that its deterrent effect would outweigh the costs to the justice system. The opposite would occur here: relevant evidence would be excluded with no perceivable deterrent effect on police behavior. *See Herring,* 555 U.S. at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

The same holds true even if Commissioner Phillips or another court employee made the error. Again, it should be clear that because it *was* an oversight, it is not the sort of behavior that is subject to the deterrent purpose of the exclusionary rule. Moreover, as the Supreme Court has noted, "the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees." *Arizona v. Evans*, 514 U.S. 1, 14 (1995) (citing *Leon*, 468 U.S. at 916). The Court in *Evans* therefore imposed a "categorical exception to the exclusionary rule for clerical errors of court employees." *Evans*, 514 at 16 (citations omitted). Ultimately, regardless of who committed the error, excluding evidence under these circumstances would not serve the deterrent purpose the exclusionary rule was designed to serve.

Nor is this a situation in which the judicial officer abandoned his judicial role. Here, the affidavit supporting the cell phone search warrant establishes probable cause to believe the phones would contain evidence of a crime. ECF No. 30-2 at 5. Assuming the error occurred at the signing stage, the commissioner should have recognized that the cell phone affidavit had mistakenly been used to support a DNA warrant, and *vice-versa*. But a "lack of thoroughness does not rise to the level of wholly abandoning the judicial role such that it was

9

objectively unreasonable for executive branch employees to rely on his approval of the warrant." *Archer v. Chisholm*, 191 F. Supp. 3d 932, 948 (E.D. Wis. 2016), *aff'd*, 870 F.3d 603 (7th Cir. 2017). The abandonment of the judicial role arises only when the neutrality of the judge is compromised, as in *Lo–Ji Sales, Inc. v. New York*, where the judge himself was present at and "conducted a generalized search" and "allowed himself to become a member, if not the leader, of the search party." 442 U.S. 319, 327 (1979). Such conduct is not alleged here.

It's true that the judicial role can also be compromised when the judge acts as a "rubber stamp" for law enforcement. *Leon,* 468 U.S. at 914 (quoting *Aguilar v Texas*, 378 U.S. 108, 111 (1964)). Taylor maintains that the fact Commissioner Phillips signed the three search warrants within four minutes of each other shows that he didn't carefully read *any* of the warrants. *See* ECF No. 33 at 3. I disagree. The warrant face sheets indicate that Commissioner Phillips signed the phone warrant at 3:53 p.m., the Tabor DNA warrant at 3:55 p.m., and the Taylor DNA warrant at 3:57 p.m. These timestamps do not reflect how long Commissioner Phillips spent *reviewing* the search-warrant materials, particularly the first warrant. It is common for a group of related warrants to contain the same underlying factual nexus, which means it might take the judicial officer longer to read through the initial affidavit than it takes to read the subsequent affidavits, which (as is the case here) contain mostly the same underlying information. Nor do these timestamps demonstrate that Commissioner Phillips reviewed and signed the phone warrant materials *before* he ever looked at the other applications. Rather, the timestamps simply reveal that Commissioner Phillips signed the three search warrants—which all related to the same investigation—contemporaneously, a common practice utilized by issuing judicial officers. The fact that the three warrants were signed within the span of

10

four minutes therefore is consistent with the affidavits being mixed up during the assemblage process.

## CONCLUSION

For all the foregoing reasons, it is **RECOMMENDED** that the defendant's motion to suppress, ECF No. 29, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of your right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge