UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

TRAYVON TAYLOR,

        Defendant.

Case No. 20-cr-100-pp

**ORDER ADOPTING RECOMMENDATION (DKT. NO. 34) AND DENYING MOTION TO SUPPRESS (DKT. NO. 29)**

Trayvon Taylor filed a motion to suppress evidence retrieved from the search of his phone on the ground that the warrant was not supported by probable cause. Dkt. No. 29. Magistrate Judge Stephen C. Dries found it "clear that the search-warrant affidavits were mismatched as a result of a clerical error" and recommended that this court deny the motion. Dkt. No. 34. The defendant timely objected. Dkt. No. 35. The court will overrule the defendant's objections, adopt Judge Dries's recommendation and deny the motion to suppress.

**I.    Standard of Review**

Rule 59(b) governs a district court's referral of motions to suppress to magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate

1

judge's recommendation, the district judge must review de novo the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

**II. Background**

    A.    <u>Factual Background</u>

The defendant does not object to the facts as stated in Judge Dries' report:

> At approximately 3:20 p.m. on March 4, 2020, REH was sitting in his vehicle in a Walgreens parking lot in Wauwatosa when an individual opened his door and pointed a handgun at him. *See* ECF No. 30-2 at 2–3. Another individual entered the passenger side of REH's vehicle. *Id.* at 3. Both individuals told REH to leave his keys inside the vehicle, but REH refused. After the second individual unsuccessfully tried to grab the keys from REH's hands, the two individuals left the parking lot on foot. A few minutes later, in a bank parking lot located across the street from the Walgreens, SC was loading items into the trunk of her black 2006 Lincoln Zephyr when an someone pressed a small, black handgun to her stomach and said, "Give me the keys." *Id.* SC gave the individual her keys; he and two other males entered SC's vehicle and drove away.

> On March 8, 2020, officers from the Milwaukee Police Department observed the stolen Lincoln Zephyr in the area of North 35th Street and West Keefe Avenue. *See* ECF No. 30-2 at 3. When officers attempted to stop the vehicle, the driver sped away, eventually reaching speeds in excess of eighty miles per hour. The 1.7-mile pursuit ended a short time later when the stolen vehicle ran a red light at North 35th Street and West North Avenue and crashed into several vehicles that were driving through the intersection. Both the driver, identified as Larnelle J. Tabor, and the passenger, [the defendant], were arrested. At the time of his arrest, Tabor was in possession of a loaded, black 9mm handgun and suspected marijuana and cocaine. Inside the stolen vehicle, officers located a loaded, black .22 caliber handgun. The following day, officers

searched the vehicle and found a digital scale, methamphetamine pills, marijuana, a pink and white iPhone, and a silver iPhone.

On March 9, 2020, Martin Keck, a detective with the Wauwatosa Police Department, presented a Milwaukee County prosecutor with three search-warrant affidavits: (1) to collect a DNA sample from [the defendant], *see* ECF No. 30-1; (2) to collect a DNA sample from Tabor, see ECF No. 30-2; and (3) to search the two iPhones recovered from the stolen vehicle, *see* ECF No. 30-3. Later that day, Detective Keck submitted the three warrant affidavits to Barry Phillips, a judicial court commissioner with the Milwaukee County Circuit Court. Commissioner Phillips signed the phone warrant at 3:53 p.m., *see* ECF No. 30-3 at 1; the Tabor DNA warrant at 3:55 p.m., *see* ECF No. 30-2 at 1; and the Taylor DNA warrant at 3:57 p.m., *see* ECF No. 30-1 at 1. The DNA warrants were executed and returned the following day. See ECF No. 30-1 at 5; ECF No. 30-2 at 6. A forensic examination of the iPhones revealed text messages, photographs, and an associated phone number and email address that were of evidentiary value. *See* ECF No. 30 at 3. Using the phone number associated with the pink and white iPhone, officers later obtained a warrant for the phone's cell-site location information. See *id.* at 3–4.

Dkt. No. 34 at 1-3.

The federal grand jury has charged the defendant and Tabor with two counts of carjacking, two counts of brandishing a firearm during a crime of violence and one count of unlawful transportation of a stolen motor vehicle. Dkt. No. 1 at 1-5. The indictment also charges the defendant with knowingly and intentionally possessing with intent to distribute amphetamines and possession of a firearm in furtherance of a drug trafficking crime. Id. at 6-7.

B.     The Motion to Suppress (Dkt. No. 29)

On September 8, 2020, the defendant filed a motion to suppress all evidence and derivative evidence acquired from the search of his phone, a pink and white iPhone, seized by the Wauwatosa Police Department on or about

3

March 8, 2020. Dkt. No. 29. He argued that the warrant authorizing the search of the phone was not supported by probable cause and was invalid under the Fourth Amendment. Id. at 1.

The defendant alleged that the affidavit attached to the warrant for the search of the phone failed to establish that any criminal evidence was located on his phone, asserting that it appeared no one had reviewed the affidavit before it was submitted or signed. Id. at 2. The defendant pointed out that the affidavit said nothing about the phones the warrant targeted. Id. The defendant speculated that the affiant cut and pasted language from the affidavit in search of the warrant seeking DNA evidence and modified only the items to be searched. Id. at 4. Given the apparent error, the defendant also speculates that the commissioner did not read the affidavit before signing the warrant; he argues that if the commissioner had read the affidavit, "it would have been obvious that this affidavit was deficient, or at least, intended for DNA evidence (not phones)." Id. The defendant says that the deficiencies in the affidavit "undermine any assertion that officers could have relied on this warrant in good faith, because (the defendant says) the commissioner wholly abandoned his judicial role and the affidavit was "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. Id.

    C.    <u>Government's Response (Dkt. No. 30)</u>

The government responded that a review of all three warrants makes clear that Commissioner Phillips reviewed them at the same time. Dkt. No. 30 at 4. The government said that it "appear[ed]" that the affidavit pages of the

search warrant for co-defendant Tabor's DNA and affidavit pages of the search warrant for the phones "were swapped out and attached incorrectly." Id. The government argued that it was impossible to know whether Commissioner Phillips or Detective Keck made the mistake in attaching the wrong affidavit pages to the warrants but characterized the mis-attachment as a "a clerical error" that was "immaterial." Id. It asserted that in his affidavit, Detective Keck outlined in detail the nexus between the phones and criminal activity. Id. The government disagreed with the defendant that the good faith exception did not apply, asserting that it was reasonable for Keck to rely on the warrant Commissioner Phillips had signed because all three warrants were submitted, reviewed and signed at the same time. Id. at 5. Finally, the government argued that the evidence from the phone would have been found under the inevitable discovery doctrine. Id. at 6-7.

D.     Recommendation (Dkt. No. 34)

Judge Dries concluded that someone "mistakenly interchanged the phone affidavit with the affidavit for Tabor's DNA." Dkt. No. 34 at 7 (comparing dkt. nos. 30-2 with 30-3). Judge Dries began by noting that it was undisputed that on March 9, 2020, Keck had submitted three warrant requests related to the carjackings. Id. at 6. It was also undisputed that Commissioner Phillips had reviewed all three warrant requests at the same time. Id. One of the affidavits sought permission to conduct a forensic examination of two iPhones recovered from the stolen vehicle. Id. Judge Dries indicated that that affidavit "described the facts of the attempted and competed carjackings, indicated that

5

two iPhones were recovered from the stolen vehicle a few days later, and explained the 'nexus' between the two phones and the alleged crimes." Id. at 6-7. Judge Dries found that that affidavit "clearly set forth sufficient facts from which a reasonable prudent person could believe that a search of the phones would uncover evidence of a crime." Id. at 7.

The issue—the "twist," as Judge Dries characterized it—was that "someone—it's impossible to know who—attached the affidavits to the wrong warrants." Id. As Judge Dries explained, "although there is an affidavit demonstrating probable cause to search the cell phones, that affidavit is appended to the warrant to search Larnelle Tabor's DNA, *not* to the warrant to search the phones." Id. And the warrant to search the cell phones was supported by the affidavit seeking a search of the defendants' DNA. Id.

Judge Dries found it clear that someone mistakenly interchanged the affidavits. Id. Observing that courts do not test the validity of search warrants in a vacuum, Judge Dries found that it was reasonable to view the warrant "in its broader context here and find that the clerical mistake of improperly matching the affidavits with the warrants does not undermine the validity of the phone warrant," finding that to conclude otherwise would elevate form over substance. Id. Judge Dries concluded that "[u]nder these unusual circumstances, it is appropriate to recognize the clerical error for what it is, rather than elevate the gaffe to a matter of grave constitutional significance." Id. at 8.

Judge Dries also found that even if the warrant were invalid, suppression was not an appropriate remedy "for a mistake made while assembling or filing a search-warrant package." Id. He explained that

> [a]lthough we do not know whether Detective Keck made the error or whether it was made by the commissioner or by another court employee, it does not matter. Assume it was Detective Keck. Because probable cause to search the phones existed, as demonstrated in the cell phone affidavit, Detective Keck did not need to resort to trick, ruse, or deception to obtain the warrant, and neither did he commit any other misconduct that would be deterred by suppression. From Keck's perspective, there would have been no point in *deliberately* switching the affidavits—it was an obvious blunder. The exclusionary rule was not designed to deter innocent mistakes.

Id.

Judge Dries applied the same reasoning in considering whether suppression would be the appropriate remedy if Commissioner Phillips or some other court employee had made the error. Id. at 9. Judge Dries said that because the attachment of the wrong affidavit to the warrant was an oversight, "it is not the sort of behavior that is subject to the deterrent purpose of the exclusionary rule." Id. Further, citing Arizona v. Evans, 514 US. 1, 14 (1995), he pointed out that the Supreme Court's description of the exclusionary rule as being "historically designed as a means of deterring police misconduct, not mistakes by court employees." Id.

As to the good faith exception to the warrant requirement, Judge Dries concluded that Commissioner Phillips had not abandoned his judicial role. Id. Even if the error had occurred at the signing stage, and even if Commissioner Phillips should have noticed that the affidavit and warrant were mis-matched, Judge Dries concluded that a lack of thoroughness did not constitute an

7

abandonment of the judicial role. Id. at 9-10. Pointing to the Supreme Court's decision in Lo-Ji Sale, Inc. v. New York, 442 U.S. 319, 327 (1979), Judge Dries concluded that a judicial officer abandons the judicial role "only when the neutrality of the judge is compromised." Id. at 10. While agreeing that a judge may also abandon the judicial role by acting as a "rubber stamp" for law enforcement, Judge Dries found no evidence that Commissioner Phillips had acted as a rubber stamp. Id. He concluded that the time stamps showed only the times Commissioner Phillips signed the warrants, providing no information about how long he spent *reviewing* the materials relating to the warrants, and observed that the subject matter of all of the affidavits arose from the same underlying facts. Id.

    E.    Objection (Dkt. No. 35)

The defendant argues that it is improper to look outside the supporting affidavit to determine whether probable cause exists. Dkt. No. 35 at 1 (citing United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003)). He asserts that Judge Dries looked at an affidavit attached to a different warrant to conclude that there was probable cause for the phone warrant and asserts that this was improper. Id. at 2. He argues that because the phone warrant was supported by an affidavit that did not provide probable cause that the phone would contain evidence of criminal activity, law enforcement could not reasonably rely on it in good faith. Id.

8

F.  Government's Response (Dkt. No. 36)

The government reiterates that the mix-up constituted a clerical error. Dkt. No. 36 at 4. It argues that Judge Dries properly applied the law to the facts. Id. More to the point, the government points out that Judge Dries had correctly observed that the defendant has not disputed that there was probable cause to search the phone. Id. at 5. The government asserts that the defendant's request for suppression is based on a technicality. Id. The government says that it was reasonable for Keck to rely on the warrant, given that Commissioner Phillips signed all three warrants at the same time. Id. It urges this court to give Commissioner Phillips' decision to sign the warrant great deference. Id. at 6. Finally, it argues that after the defendant was arrested, he provided the cell phone number to law enforcement at booking; the government asserts that under the inevitable discovery doctrine, "even if Det. Keck had not learned [the] defendant's number from the phone analysis, law enforcement had this number in their possession when the defendant provided it at the time of booking." Id. at 7. Thus, the government asserts, Keck could have applied for a warrant for any phone to which that number was assigned, and would have been able to retrieve the cell cite data that way. Id.

**III. Analysis**

The Fourth Amendment mandates that to obtain a warrant, law enforcement must obtain a probable cause determination by a "neutral and detached magistrate." United States v. Clark, 935 F.3d 558, 563 (7th Cir. 2019) (quoting Johnson v. United States, 333 U.S. 10, 14 (1948)). "The application for

9

the warrant 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983)). It stands to reason that the "neutral and detached" magistrate's ability to determine whether the affidavit for the warrant states probable cause "depends on the accuracy of the information the police submit." Id. False, material information presented deliberately or recklessly invalidates the warrant. Id. (citing United States v. McMurtrey, 704 F.3d 502, 508 (7th Cir. 2013)).

The defendant has not challenged the accuracy of the information in the affidavits. He has not suggested that Keck provided a skeletal affidavit, included the wrong information, fabricated information or cut and pasted information from some other investigation. His argument that Keck cut and pasted from the affidavit supporting the buccal swab warrant is illogical because there are three separate affidavits and they match up with the requested searches. One of the affidavits supports the search of the phones. Dkt. No. 30-2 at 2-5. The defendant argues that because someone stapled the DNA affidavit to the search warrant for the phones, and the phone affidavit to the search warrant for the DNA evidence, there was no probable cause to search the phone. He frames his objection this way: "Because a separate affidavit pertaining to the phone was submitted contemporaneously to the commissioner, the magistrate judge found that the affidavit that was attached to the phone warrant need not establish probable cause." Dkt. No. 35 at 1.

10

Case 2:20-cr-00100-PP   Filed 11/23/20   Page 10 of 15   Document 39

In fact, Judge Dries did *not* find that the affidavit that was attached to the phone warrant "need not establish probable cause." He found that the affidavit that established probable cause to search the phone had been attached to the wrong warrant as a result of clerical error. Dkt. No. 30 at 1. That finding is supported by the following facts:

- Detective Keck filed three warrants with affidavits at the same time (one for the defendant's DNA, one for Tabor's DNA and one for the search of the phones);

- Each of the three warrants related to the same carjackings, allegedly committed by the defendant and Tabor on March 4, 2020;

- One of the affidavits sought forensic evidence from the phones recovered from the vehicle that was stolen during one of the carjackings; and

- Keck (or someone else with whom he was working) submitted all three warrants and supporting affidavits to Commissioner Phillips, and Commissioner Phillips signed all three of them at or about the same time.

Dkt. Nos. 30-1, 30-2, 30-3. The court agrees with Judge Dries that excluding evidence because someone stapled the wrong affidavit to the warrant elevates form over substance. There was probable cause to search the phone. Commissioner Phillips had a basis for issuing a warrant to search the phone. The search was supported by probable cause. The fact that the document that showed that there was probable cause was mistakenly attached—through a clerical error—to one of the other warrants in the same package of warrants relating to the same crimes is not a basis for suppression.

On at least two occasions the Seventh Circuit has declined to exclude evidence in the face of obvious clerical errors. In United States v. Norris, an officer used the word "they" in reference to one confidential informant. 640 F.3d 295, 302 (7th Cir. 2011). The officer had admitted that he had used the cut and paste function on his computer to write certain paragraphs; however, he testified that he had made sure that the events he changed were correct and accurate. Id. The Seventh Circuit held that "minor clerical errors generally are not fatal to a search warrant." Id. (quoting United States v. Waker, 534 F.3d 168, 172 (2d Cir. 2008)). Similarly, in United States v. Jones, 600 F.3d 847, 851 (7th Cir. 2010), the Seventh Circuit refused to suppress evidence where the warrant affidavit for the wiretaps contained a clerical error.

As explained by the United States Supreme Court, exclusion is not a necessary consequence of a Fourth Amendment violation. Herring v. United States, 555 U.S. 135, 141 (2009). The court focuses on the "efficacy of the rule in deterring Fourth Amendment violations in the future." Id. The rule was meant to deter "police rather than judicial misconduct." Id. at 142. In United States v. Leon, the Supreme Court determined that when an officer's conduct is objectively reasonabe, "excluding the evidence will not further the ends of the exclusionary rule in an appreciable way." 468 U.S. 897, 919, 920 (1984). Similarly, the Court refused to apply the exclusionary rule where a warrant was invalid because a judge forgot to make "clerical corrections." Massachusetts v. Sheppard, 468 U.S. 981 (1984).

Detective Keck applied for three warrants for three searches—all related to the same investigation—and he knew that he had established probable cause for each of the three searches. He had separately prepared three affidavits, one of which explained why the phones—recovered from the stolen car—were linked to the crimes and to the defendant and Tabor. There is no reason for him to have intentionally stapled the wrong affidavit to the wrong search warrant.

There is a presumption that Keck acted in good faith; the defendant has the burden of presenting evidence to overcome that presumption. See United States v. Wiley, 475 F.3d 908, 917 (7th Cir. 2007). The presumption may be overcome with evidence that: (1) the detective intentionally or recklessly misled the judge with false information; (2) the judge abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare-boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid. United States v. Rees, 957 F.3d 761, 771 (7th Cir. 2020). The defendant argues that Commissioner Phillips wholly abandoned his judicial rule.

The only evidence the defendant proffers in support of this argument is the fact that the commissioner signed the phone warrant first at 3:53 p.m., then signed others in quick succession at 3:55 p.m. and 3:57 p.m. Dkt. No. 33 at 3. As Judge Dries noted, this argument requires the court to assume that Commissioner Phillips did not read the warrants or any of the affidavits before

13

signing the first warrant. The defendant has presented no evidence—and no case law—suggesting that signing three warrants in a row shows that the judicial officer never read any of them.

This argument also requires the court to assume that the wrong affidavit was attached to the phone warrant at the time Commissioner Phillips reviewed and signed it. The defendant has not—and cannot—produce any evidence to support that assumption. As Judge Dries discussed, Commissioner Phillips may have accidentally put the wrong affidavit with the phone warrant after signing the documents. Some other member of the court's staff may have done so. The law enforcement officers may have mis-attached the affidavits after Commissioner Phillips had signed them. There is no evidence that Commissioner Phillips failed to read any of the affidavits and no basis to find that he was acting as an "adjunct law-enforcement officer." See Rees, 957 F.3d at 771.

Because there was probable cause to support the warrant to search the defendant's phone, the court need not reach the good faith exception or the inevitable discovery doctrine. The court notes only that it agrees with Judge Dries that it was reasonable for Keck to rely on the warrant in good faith, given the facts discussed above. And the government's argument that Keck would have gotten a warrant to search the phone eventually, even if he'd done so by seeking a warrant for whatever phone had the number the defendant gave at booking, is a compelling one.

14

## IV. Conclusion

The court **OVERRULES** the defendant's objections, dkt. no. 35, and **ADOPTS** Judge Dries's recommendation, dkt. no. 34

The court **DENIES** the defendant's motion to suppress. Dkt. No. 29.

Dated in Milwaukee, Wisconsin this 23rd day of November, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

15

Case 2:20-cr-00100-PP   Filed 11/23/20   Page 15 of 15   Document 39